IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ROBERT E. HINES,**

    Petitioner,

v.                                               Civil Action No. 3:13cv7
                                               (Judge Groh)

**R.A. PERDUE, Warden,**

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On January 22, 2013, the *pro se* petitioner, an inmate then-incarcerated at FCI Gilmer in Glenville, West Virginia,[1] filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. The Clerk of Court issued a Notice of Deficient Pleading, advising the petitioner to correct certain deficiencies with his pleadings. Petitioner paid the required fee on February 4, 2013, and on March 4, 2013, filed his court-approved form petition.

On March 7, 2013, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, a Show Cause was issued to the respondent. On May 6, 2013, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. On May 7, 2013, a <u>Roseboro</u> Notice was issued. On May 21, 2013, the petitioner filed his response. On August 12, 2013, the respondent was directed to provide a more complete response. The respondent filed a more complete response on August 26, 2013. Petitioner replied on September 9, 2013.

This case is before the undersigned for review, report and recommendation pursuant to LR PL 2.

---

[1] Petitioner is now incarcerated at FCI Estill, in Estill, South Carolina.

1

## II. Facts

Between October, 2007 and May, 2008, in the Northern District of Ohio, petitioner and three co-defendants engaged in a conspiracy to obtain, transfer and use the private identifying information of others to make false statements to federally insured financial institutions, for the purpose of obtaining credit cards in the names of others. They then used those credit cards to obtain goods and services. Accordingly, on September 30, 2009, petitioner was arrested by Lucas County, Ohio authorities, and *inter alia*,[2] charged with Burglary and Theft/Aggravated Theft (Case No. CR-09-2948); Receiving Stolen Property;[3] as well as two additional counts of Theft/Aggravated Theft; five counts of Forgery; and four counts of Taking Identity of Another (collectively, Case No. CR-09-2982).[4]

In related federal proceedings, on March 3, 2010, the Grand Jury in the Northern District of Ohio returned a thirty-one count indictment, charging petitioner with Count 1: Conspiracy, in violation of 18 U.S.C. §371; Counts 2 – 14: False Credit Card Application, in violation of 18 U.S.C. §§2 and 4; Counts 15 – 21: Unlawful Possession of Another's Identification, in violation of 18 U.S.C. §§2 and 1028(a)(7); Counts 22 – 27: Wire Fraud, in violation of 18 U.S.C. §§2 and 1343; and Count 28: Aggravated Identity Theft, in violation of 18 U.S.C. §§2 and 1028A.[5] On March 4, 2010, a federal arrest warrant was issued and Lucas County, Ohio officials placed petitioner on "holder" status.[6]

---

[2] Petitioner was also charged with Resisting Arrest; Disorderly Conduct; Nonsupport of Dependents, and several traffic violations.

[3] Dkt.# 35-4; Dkt.# 26-1, ¶17 at 3; and Dkt.# 26-8 at 3.

[4] Dkt.# 35-1, ¶18 at 3, and Dkt.# 26-8.

[5] (N.D. Ohio, Dkt.# 1)(3:10cr107).

[6] Dkt.# 26-1, ¶18 at 3, and Dkt.# 26-9.

On March 10, 2010, petitioner was sentenced by the Sylvania Municipal Court[7] to 20 days imprisonment for Receiving Stolen Property, a sentence expiring on March 30, 2010.[8] Also on March 10, 2010, the Northern District of Ohio issued a writ of habeas corpus *ad prosequendum*, directing the Sheriff of Lucas County to produce petitioner to be arraigned on the federal charges.[9] Two days later, on March 12, 2010, petitioner appeared in district court was returned to state authorities immediately after the arraignment.[10]

On March 29, 2010, in the Lucas County Court of Common Pleas, petitioner was sentenced to a 14-month term of imprisonment on the Grand Theft charge in Case No. CR-09-02948,[11] and to an 11-month term of imprisonment for Theft and a 14-month term of imprisonment for Identity Fraud in Case No. CR-09-2982, terms to be served concurrent to each other and consecutive to the sentence imposed in Case No. CR-09-02948,[12] for a total aggregated 28-month term of imprisonment.[13] In both cases, prior custody credit was awarded to petitioner for the of 181-day time period from September 30, 2009, when he was first arrested by Lucas County authorities, until March 29, 2010, the date he was sentenced.[14]

---

[7] Sylvania Municipal Court is in Sylvania, Ohio.

[8] Dkt.# 26-1, ¶19 at 3, and Lucas County Sheriff's Office Booking Summary, Dkt.# 26-8.

[9] (N.D. Ohio)(3:10cr107).

[10] See Arrest Warrant and Corresponding Documents for Case No. 3:10cr107, N.D. Ohio Dkt.# 35-13, and United States Marshals Service Form 129, Dkt.# 35-14.

[11] Dkt.# 26-1, ¶21 at 3, and Lucas County Court of Common Pleas Docket for Case No. 200902948, Dkt.# 26-11.

[12] Dkt.# 26-1, ¶21 at 3, and Lucas County Court of Common Pleas Docket for Case No. CR2009-2982, Dkt.# 26-12.

[13] The 11 month term of incarceration imposed in CR-09-02982 for Theft is absorbed by the 14 month term of incarceration imposed for Identification Fraud in the same criminal case, based on the concurrent nature of the offenses Dkt.# 35-1, ¶31 at 5.

[14] Dkt.# 26-1, ¶21 at 3; Dkt.# 26-12, and Dkt.# 26-13.

On May 13, 2010, petitioner entered a plea without a plea agreement in district court to the twenty-eight federal charges.[15] On May 21, 2010, Lucas County authorities relinquished primary custody of petitioner to the United States Marshals ("USM").[16] Petitioner remained in federal custody until his November 22, 2010 sentencing, when he was sentenced to a 60-month total term of imprisonment the federal charges.[17]

Petitioner's projected release date, on which he will complete serving his federal sentence, with consideration for good conduct time, is October 17, 2014.[18] However, upon completion of his federal sentence, he still has the balance of the outstanding 28-month aggregated state term of imprisonment to serve.

### III. Contentions of the Parties

#### A. The Petition

Petitioner initiated this action by filing a habeas corpus petition, initially raising two claims: a challenge to prior custody credit toward his federal sentence, and an allegation that at sentencing, the Court failed to consider or apply U.S.S.G. §§5G1.3(b)(1) and 5G1.3(c), in determining his sentence. After receiving the Notice of Deficiency, petitioner re-filed his petition on a court-ordered form without raising the U.S.S.G. §§5G1.3 issue, instead re-framing his original Ground One claim as four claims, all of which can be condensed back into his original Ground One challenge to prior custody credit. Specifically, petitioner contends that the BOP unlawfully denied him prior custody credit for time he alleges he spent in federal custody, from

---

[15] (N.D. Ohio, Dkt.# 41 at 2 – 3 and 25 – 26)(3:10cr107).

[16] Dkt.# 26-1, ¶23 at 3, U.S. Marshals Service Individual Custody and Detention Report (USM-129), Dkt.# 26-10.

[17] (N.D. Ohio, Dkt.# 72 at 11)(3:10cr107, and Judgment in a Criminal Case, Dkt.# 35-19.

[18] Dkt.# 26-1, ¶25 at 3 and Dkt.# 26-13.

4

April 9, 2010,[19] when the Ohio state authorities were directed to produce him in federal court pursuant to a writ of habeas corpus *ad prosequendum*, until November 23, 2010, the day after he was sentenced on his federal charges.

Petitioner asserts that he has exhausted his administrative remedies and attaches copies of his grievances, to support his contention. He also attaches a copy of the transcript of his sentencing hearing and excerpts from various documents from his state and federal criminal proceedings.

As relief, petitioner seeks a *nunc pro tunc* "destination," to "reward" him with 7 months and 13 days prior custody credit for time served from April 9, 2010 [sic] – November 23, 2010, and requests that the Court apply U.S.S.G. §§5G1.3 to his sentence "for the 6–month time credit from his state conviction which was fully taken into account in his federal indictment as well to enhance his federal sentence. Both time credits would total an amount of 13-months and 13-days time [sic] credit."[20] Alternatively, he asks the Court to transfer the U.S.S.G. §§5G1.3 back to the sentencing Court, for it to address the issue.

**B. <u>The Respondent's Motion to Dismiss, or for Summary Judgment (Dkt.# 25)</u>**

The respondent contends that the petition should be dismissed, or alternatively, summary judgment should be granted, because

    1) petitioner's federal sentence commenced on November 22, 2010, the day his federal sentence was imposed;

    2: petitioner's prior custody credit is appropriately calculated; and

    3) petitioner is not entitled to additional prior custody credit, because all the time he spent in custody prior to the commencement of his federal sentence was credited toward his state sentence.

---

[19] Petitioner appears to have made a typographical error; the writ of habeas corpus *ad prosequendum* that he contends triggered his federal custody was issued on March 10, 2010, not April 9, 2010.

[20] Four hundred and thirty-one days equals fourteen months and six days.

**C. Petitioner's Reply to Motion to Dismiss or Request for Summary Judgment (Dkt.# 30)**

In his response, the petitioner reiterates his claim that the BOP miscalculated his prior custody credit, attempts to refute the respondent's arguments on the same, and again insists that he is entitled to prior custody credit.

**D. Respondent's Response to Order Directing a More Complete Response (Dkt.# 34)**

The respondent clarifies issues that were inadequately addressed in its original response. Further, respondent contends that the U.S.S.G. §§5G1.3 issue is not cognizable in a §2254 petition. Finally, the respondent reiterates its argument that petitioner's prior custody credit is appropriately calculated and thus he is not entitled to any further credit.

**E. Petitioner's Reply to Respondent's More Complete Response (Dkt.# 39)**

Petitioner reiterates his claim that the BOP miscalculated his prior custody credit; attempts to refute the respondent's arguments on the same; insists that he is entitled to prior custody credit under Willis v. United States;[21] and avers that jurisdiction over the U.S.S.G. §§5G1.3 issue is proper in a §2241 petition,

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

---

[21] Willis v. United States, 438 F.2d 923 (5th Cir. 1971).

plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a

sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light

most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986.

## V. Analysis

### A. Prior Custody Credit

Petitioner's pleadings, liberally construed, appear to argue that he is entitled to have 431 days of prior custody credit applied against the 60-month term of imprisonment he is presently serving as his federal sentence.

Review of this petition must start with the basic premise that a federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). In addition, a defendant must be given credit 'for any time he has spent in official detention prior to the date the sentence commences...that has not been credited against another sentence.' 18 U.S.C. 3585(b)" King v. DeBoo, 2012 WL 1119763, *2 (N.D. W.Va. Apr. 3, 2012)(Bailey).

The Attorney General, through the BOP, is responsible for computing federal terms of imprisonment. See United States v. Wilson, 503 U.S. 329 (1992). In making this computation, the BOP must adhere to 18 U.S.C. § 3585(b), which provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.**

(emphasis added).

The United States Supreme Court has held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive double credit for his detention time." Wilson,

9

*supra* at 337.  Therefore, under 18 U.S.C. § 3585(b), prior custody credit cannot be awarded if the prisoner has received credit towards another sentence.  See U.S. v. Brown, 977 F.2d 574 (4th Cir, 1992)(Defendant may receive credit against his federal sentence for time spent in official detention prior to the date his sentence commences **unless it has been credited against another sentence**).(emphasis added); U.S. v. Goulden, 54 F.3d 774 (4th Cir. 1995)(credit is only available for time spent in custody which has not been credited against another sentence).

Here, the parties dispute when petitioner's federal sentence began.  Petitioner acknowledges that he was not sentenced on his federal charges until November 22, 2010. However, he simultaneously argues that his federal sentence should have begun to run on March 10, 2010, when the writ of habeas corpus *ad prosequendum* issued, because he was never returned to state custody after the March 12, 2010 arraignment in district court.  Conversely, the respondent maintains that petitioner's sentence commenced on November 22, 2010, the day it was imposed.

The law is clear that the mere fact that state prisoner is in federal court pursuant to a federal writ of habeas corpus *ad prosequendum* does not mean that the prisoner's federal sentence has begun to run.  "Rather, the state retains primary jurisdiction over the prisoner, and federal custody commences only when the state authorities relinquish the prisoner on satisfaction of the state obligation." United States v. Evans, *supra* at 912.  See also Thomas v. Whalen, 962 F.2d 358, 361 n.3 (4th Cir. 1992)("A prisoner is not even in custody for purposes of section 3568 when he appears in federal court pursuant to a writ *ad prosequendum*; he is merely 'on loan' to federal authorities.").

Here, a careful review of petitioner's voluminous state and federal criminal record reveals that petitioner was continuously in state custody from the time of his September 30, 2009

arrest on the state charges until the state relinquished primary custody on May 21, 2010.[22] Petitioner was housed at the Lucas County Jail during that time.[23] Merely because the USM "borrowed" petitioner from state custody pursuant to the writ of habeas corpus *ad prosequendum,* does not establish federal custody. Evans, *supra* at 912. After the USM assumed petitioner's primary custody on May 21, 2010, he was immediately transferred from the Lucas County Jail to the Milan Detention Unit at FCI Milan, where he remained until September 3, 2010,[24] when he was returned to the Lucas County Jail, until November 23, 2010, the day after his sentencing on the federal charges.

On November 22, 2010, the district court sentenced the petitioner to total 60-month term of imprisonment; by then, approximately 20 months remained of his aggregated 28-month state sentence. Although the district court was clearly aware of his recently-imposed state sentence, it did not choose to order petitioner's federal term of imprisonment to run concurrently with the as-yet-undischarged remainder of his state sentence. However, the Court did indicate that "[y]ou have already served, as I understand it, eight months in federal custody, and that will be taken into consideration by the Bureau of Prisons."[25] After the federal sentencing, because the state had

---

[22] Although petitioner's two state criminal dockets indicate (on April 6 and 9, 2010, respectively) that the Lucas County Common Pleas Court issued warrants committing him to the Correctional Reception Center ("CRC"), in Orient, Ohio, to begin serving his state sentence, (See Dkt.# 35-16 at 8) it is apparent that petitioner was never transferred there; rather, he remained incarcerated at the Lucas County Jail until May 21, 2010. See Dkt.# 35-14 at 2 and Dkt.# 35-18.

[23] The USMS Prisoner Tracking Service Report's "Chronological Prisoner History" would seem to indicate that petitioner was actually in USM custody as early as the 53-day period from March 29, 2010 (the day petitioner was sentenced on his state charges) until May 21, 2010, but an exhaustive inquiry has led the undersigned to the conclusion that that was likely a combined bookkeeping maneuver by the state, to shift the cost of prisoner's incarceration to the federal government, once the state proceedings against him were completed, as well as a convenience for the USM, to keep petitioner in a geographically-convenient location for the upcoming federal proceedings. Actual transfer of primary custody from the state to the federal authorities did not occur until May 21, 2010. See Dkt.# 35-14 at 2; Dkt.# 35-12 at 1; and Dkt.# 35-18.

[24] Presumably petitioner was brought back to the Toledo area from Milan, Michigan, to the Lucas County Jail, as a convenience to the USM, for the upcoming hearings in federal court. Dkt.# 35-14 at 2.

[25] Dkt.# 1-7 at 11.

already relinquished primary jurisdiction of petitioner to the district court, instead of returning him to state custody to finish serving his state sentence, petitioner contends he was transported to FCI Gilmer.[26]

Here, petitioner's claim that he is entitled prior custody credit from March 10, 2010 until November 23, 2010 is unfounded. At the time of his March 29, 2010, state sentencing to a 28-month total aggregated term of imprisonment, he was awarded prior custody credit of 181 days, for the time period of September 30, 2009, when he was arrested by the Lucas County authorities, until he was sentenced on March 29, 2010.[27] In addition to those 181 days, the state sentencing court has also granted him credit for "future custody days while defendant awaits transportation to the appropriate state institution."[28] Further, the state has also awarded petitioner 189 days of prior custody credit for the time periods of March 1 – March 3, 2008;[29] April 29, 2009;[30] July 8, 2009;[31] and May 22, 2010 - November 21, 2010,[32] for a total of at least 370

---

[26] The USMS Prisoner Tracking System Report indicates that after his federal sentencing, petitioner was transported to the N.E. Ohio Correctional Center, where he remained until December 15, 2010.

[27] See Dkt.# 35-15, Dkt.# 35-16, and Dkt.# 35-17.

[28] See Dkt.# 35-15 at 5, and Dkt.# 35-16 at 8.

[29] Petitioner received this credit for time spent in state custody after his March 1, 2008 arrest by Lucas County authorities for Receiving Stolen Property (Case No. CRA006-01708) and multiple traffic-related charges, and his subsequent release on March 3, 2008, because that time was not credited against his state sentences. See Dkt.# 35-3; Dkt.# 35-21; and 35-20 at 2.

[30] Petitioner received 1 day prior custody credit for his April 29, 2009 arrest and same day release by Lucas County authorities for Failure to Display a License (TRD-09-01496-0102); Resisting Arrest (CRB-09-06610-0102); Disorderly Conduct (CRB-09-006610-0202); Use of Headlight Beams (TRD-09-01496-0202); and Receiving Stolen Property (CRA-06-01708), because this day was not previously credited against any state sentence. See Dkt.# 35-10 and Dkt.# 35-20 at 2.

[31] Petitioner received 1 day prior custody credit for July 8, 2009, for his arrest and same day release by Lucas County authorities for Failure to Display License (TRD-09-01496-0102); Resisting Arrest (CRB-09-06610-0102); Disorderly Conduct (CRB-09-006610-0202); Use of Headlight Beams (TRD-09-01496-0202); and Receiving Stolen Property (CRA-06-01708), because this day was not previously credited against any state sentence. See Dkt.# 35-11 and Dkt.# 35-20 at 2.

days. All of the time after petitioner's state sentencing on March 29, 2010, is considered time credited to the state sentence and will be formally applied by the Ohio Department of Corrections, once petitioner is delivered to their custody upon completion of his federal sentence. Given it cannot yet be determined with certainty exactly how many days of prior custody credit petitioner will be entitled to, because the state has indicated its intention to award the time, requiring the BOP to award the custody credit against the federal sentence now would risk the double credits that 18 U.S.C. § 3585(b) was enacted to prevent.

Accordingly, the undersigned finds that the BOP, in conjunction with the Ohio Department of Corrections, has properly calculated petitioner's prior custody credit. The time from March 10 – March 29, 2010 has already been credited, and the time period from March 29, 2010 – November 21, 2010, the day before his federal sentence commenced, will be credited by the state, when he is returned to their custody to complete his sentence.

Finally, the undersigned notes that since filing this case, petitioner has twice unsuccessfully sought the same relief in the sentencing court that he is now seeking here.[33] Petitioner's insistence that the district court did not order his federal sentence to run concurrently with his state sentence because it was "misinformed," and believed his state sentence was already complete, is unsupported by the record. In a May 31, 2013 Order denying petitioner's May 20, 2013 *pro se* Motion (Request) for Dual Sentences to Run Concurrent with *Nunc pro Tunc* Designation, the district court noted that its denial was based on the history and facts set

---

[32] Petitioner was granted 184 days of prior custody credit for May 22, 2010, the date after he was relinquished from state custody to the custody of federal authorities, through November 21, 2010, the date prior to the commencement of his federal sentence, because federal authorities had primary jurisdiction over him during this time. See Dkt.# 35-22 and Dkt.# 35-20 at 2.

[33] See Motion to Reduce Sentence *To Allow Defendant To Receive Credit For Two Hundred Twenty-Nine Days Served In The Lucas County Jail,* (N.D. Ohio. Dkt.# 73)(3:10cr107) and *pro se* Motion (Request) for Dual Sentences to Run Concurrent with *Nunc pro Tunc* Designation, (N.D. Ohio, Dkt.# 86)(3:10cr107).

forth in the Government's response.[34] In that response, the Government had noted that through counsel, petitioner had previously attempted to obtain credit for time served, but that after receiving the "government's response that the motion was moot since he had received credit, defendant withdrew his motion."[35] The Government went on to argue:

> [t]his Court was not misinformed. The Court recognized at the time of accepting defendant's plea, that defendant would still have an undischarged term of imprisonment with the State by the time the federal sentence was imposed: "THE COURT: So as of the date of sentencing it will be somewhere between 10 and 11 months?" Plea Hearing 16 (May 13, 2010).[36]

## B. U.S.S.G. §§5G1.3(b)(1) and 5G1.3(c) Sentencing Issue

Petitioner contends that at sentencing, the court failed to reduce his sentence by applying U.S.S.G. §§5G1.3(b)(1) and/or 5G1.3(c). He requests a sentence modification or, alternatively, a transfer of this portion of his case back to the sentencing court.

Except as discussed below, a motion filed under §2241 necessarily must pertain to "an applicant's commitment or detention," rather than the imposition of a sentence. Compare 28 U.S.C. § 2241 (§2241 application for writ of habeas corpus must allege facts concerning the applicant's commitment or detention) and 28 U.S.C. §2255 (motions to vacate a sentence brought under §2255 are collateral attacks upon the imposition of a prisoner's sentence). Because the petitioner herein is seeking to have his sentence modified, he is seeking §2255 relief not §2241 relief. See In re Jones, 226 F.3d 328 (4th Cir. 2000).

However, despite the fact that a §2255 petition is the proper vehicle for challenging a conviction or the imposition of a sentence, the petitioner is entitled to file a §2241 petition if he

---

[34] Marginal Entry Order denying Motion for Dual Sentences to Run Concurrent. (N.D. Ohio, Dkt.# 88)(3:10cr107).

[35] United States of America's Response to Defendant's Request for Dual Sentence to Run Concurrent/Motion for Nunc pro Tunc Designation, (N.D. Ohio, Dkt.# 87)(3:10cr107).

[36] (United States' Response to Defendant's Request for Dual Sentence to Run Concurrent/Motion for Nunc pro Tunc Designation, (N.D. Ohio, Dkt.# 87 at 2)(3:10cr107).

can demonstrate that §2255 is an inadequate or ineffective remedy. In this respect, the Fourth Circuit has concluded that:

> §2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first §2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gate-keeping provisions of §2255 because the new rule is not one of constitutional law.

Jones, 226 F.3d at 333-34.

Here, petitioner is not challenging the execution of his sentence, but instead he is challenging the imposition of his sentence. In particular, he is alleging that his sentence was unlawfully enhanced under the sentencing guidelines because the court failed to consider all options to give him a reduced sentence.

Petitioner does not attempt to raise the savings clause, but even if he had, it is clear that he is not entitled to its application. In the instant case, even if the petitioner satisfied the first and the third elements of Jones, violations of 18 U.S.C. §§ 2, 4, 371, 1028(a)(7), 1028A, and 1343 remain criminal offenses, and therefore the petitioner cannot satisfy the second element of Jones. Consequently, the petitioner has not demonstrated that §2255 is an inadequate or ineffective remedy, and he has improperly filed a claim under §2241.

## IV. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Dkt.# 25) be **GRANTED** and petitioner's §2241 petition (Dkt.# 1 and 11) be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** of being served with a copy of this Recommendation, **or by December 24, 2013,** any party may file with the Clerk of the Court, written objections

identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 10, 2013

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE